IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

MUSCOGEE (CREEK) NATION,            )
a federally recognized Indian tribe,            )
                                                )
            *Plaintiff*,                         )
                                                )
v.                                              )            Case No. 25-cv-00050-JFJ
                                                )
                                                )
MATTHEW J. BALLARD, in his            )
official capacity as District Attorney for            )
the Twelfth Prosecutorial District of            )
Oklahoma,            )
                                                )
            *Defendant*.                         )

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND BRIEF IN SUPPORT**

## <u>TABLE OF CONTENTS</u>

I.      BACKGROUND ............................................................................................ 1

II.     STANDING ................................................................................................... 7

    A.   Plaintiff, which takes issue with prosecutions of non-members for conduct that occurred outside the Nation's historical boundaries, has not suffered an injury-in-fact. ......................... 7

    B.   A favorable ruling would not redress any purported injury. ................................................. 9

III.    THE ANTI-INJUNCTION ACT AND *YOUNGER* ABSTENTION ................................. 11

    A.   There are ongoing state criminal proceedings. .............................................................. 12

    B.   The State court provides an adequate forum to hear the claims raised in the Complaint. 12

    C.   The state proceedings involve important state interests. ................................................... 15

    D.   No exceptions to the bar on federal injunctions of state criminal proceedings  apply...... 16

    E.   Plaintiff's generalized request to enjoin potential future criminal proceedings is governed by the same Younger abstention considerations. ....................................................................... 18

IV.    COLORADO RIVER ABSTENTION .......................................................................... 19

CONCLUSION.................................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006) ............................................................................................ 9

*Carney v. Adams*,
   592 U.S. 53 (2020) .............................................................................................. 8

*City of Tulsa v. O'Brien*,
   2024 OK CR 31, 2024 WL 5001684 ........................................................ passim

*Colorado River Water Conservation Dist. v. U.S.*,
   424 U.S. 800 (1976) ................................................................................. 7, 19, 20

*D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*,
   705 F.3d 1223 (10th Cir. 2013) ......................................................................... 19

*Denezpi v. United States*,
   596 U.S. 591 (2022) ............................................................................................ 9

*Doran v. Salem Inn, Inc.*,
   422 U.S. 922 (1975) .......................................................................................... 18

*Ellis v. Morzelewski*,
   2:21-CV-639-TC, 2022 WL 3645850 (D. Utah Aug. 24, 2022) ....................... 18

*Fisher v. Whetsel*,
   142 Fed.Appx. 337 (10th Cir. 2005) ................................................................. 15

*Fox v. Maulding*,
   16 F.3d 1079 (10th Cir. 1994) ..................................................................... 19, 20

*Graff v. Aberdeen Enterprizes, II, Inc.*,
   65 F.4th 500 (10th Cir. 2023) ........................................................................... 12

*Herrera v. City of Palmdale*,
   918 F.3d 1037 (9th Cir. 2019) ........................................................................... 18

*Hicks v. Miranda*,
   422 U.S. 332 (1975) .......................................................................................... 18

*Inverarity v. Zumwalt*,
   1953 OK CR 148, 262 P.2d 725 ........................................................................ 10

*J.B. ex rel. Hart v. Valdez*,
   186 F.3d 1280 (10th Cir. 1999) ......................................................................... 12

*Joseph A. ex rel. Corrine Wolfe v. Ingram*,
   275 F.3d 1253 (10th Cir. 2002) ......................................................................... 12

*Kansas v. Garcia*,
   589 U.S. 191 (2020) .......................................................................................... 15

*Kelly v. Robinson*,
   479 U.S. 36 (1986) ............................................................................................ 15

*McClanahan v. State Tax Comm'n of Arizona*,
411 U.S. 164 (1973) ............................................................................................. 3

*McGirt v. Oklahoma*,
591 U.S. 894 (2020) ..................................................................................... passim

*Miller v. Fluent Home, LLC*,
220CV00641HCNJCB, 2021 WL 8086367 (D. Utah Mar. 18, 2021) .................... 7

*Mitchum v. Foster*,
407 U.S. 225 (1972) ........................................................................................ 1, 16

*Moore v. Sims*,
442 U.S. 415 (1979) ........................................................................................... 13

*N. Mill St., LLC v. City of Aspen*,
6 F.4th 1216 (10th Cir. 2021) ............................................................................... 8

*New Beckley Mining Corp. v. International Union*, UMWA,
946 F.2d 1072 (4th Cir. 1991) ........................................................................... 19

*Nova Health Sys. v. Gandy*,
416 F.3d 1149 (10th Cir. 2005) ......................................................................... 10

*Oklahoma v. Castro-Huerta*,
597 U.S. 629 (2022) ..................................................................................... passim

*Organized Village of Kake v. Egan*,
369 U.S. 60 (1962) ............................................................................................... 3

*Pennzoil Co. v. Texaco, Inc.*,
481 U.S. 1 (1987) ............................................................................................... 13

*Petrella v. Brownback*,
697 F.3d 1285 (10th Cir. 2012) ........................................................................... 8

*Phelps v. Hamilton*,
122 F.3d 885 (10th Cir. 1997) ........................................................................... 16

*Seneca-Cayuga Tribe of Oklahoma v. State of Okl. ex rel. Thompson*,
874 F.2d 709 (10th Cir. 1989) ........................................................................... 17

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013) .......................................................................................... 1, 11

*State v. Ashley*,
CF-2024-421 (Dist. Ct. Rogers Co.) .......................................................... 6, 19, 21

*State v. Bull*,
CF-2023-226 (Dist. Ct. Rogers Cnty.) ............................................................ 5, 16

*State v. Crosson*,
2023 OK CR 18, 540 P.3d 16 ............................................................................... 5

*State v. Davis*,
1913 OK CR 80, 130 P. 962 ............................................................................... 10

*State v. Williams*,
CF-2023-311 (Dist. Ct. Rogers Co.) ............................................................ passim

*Stitt v. City of Tulsa,*
  2025 OK CR 5 .......................................................................................... 4, 14, 17, 21
*Summers v. Earth Island Institute,* 555 U.S. 488 (2009) ............................................. 8
*United States v. Lanza,*
  260 U.S. 377 (1922) ......................................................................................... 9
*Ute Indian Tribe v. Utah, et al.,*
  790 F.3d 1000 (10th Cir. 2015) ..................................................................... 9, 17
*Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of State of Utah,*
  240 F.3d 871 (10th Cir. 2001) ...................................................................... 13, 16
*White Mountain Apache Tribe v. Bracker,*
  448 U.S. 136 (1980) ..................................................................................... 3, 13
*Winn v. Cook,*
  945 F.3d 1253 (10th Cir. 2019) ........................................................ 12, 13, 14, 15
*Younger v. Harris,*
  401 U.S. 37 (1971) ................................................................................... passim

## Statutes

20 O.S. § 40 ............................................................................................................ 10
21 O.S. § 1021 ........................................................................................................ 5
21 O.S. § 1021.2 ..................................................................................................... 5
21 O.S. § 1024.2 ..................................................................................................... 5
21 O.S. § 843.5(C) .................................................................................................. 6
22 O.S. § 1051(A) ................................................................................................... 6
63 O.S. § 2-402 ...................................................................................................... 6
63 O.S. § 2-405(B) .................................................................................................. 6
63 O.S. § 2-415(C) .................................................................................................. 5
74 O.S. § 18(A)(3) .................................................................................................. 10
74 O.S. § 18b(A)(1) ................................................................................................ 10
74 O.S. § 6 ........................................................................................................ 5, 10

28 U.S.C. § 2283 .................................................................................................7, 11

## Other Authorities

1906 Oklahoma Enabling Act ................................................................................. 3
Okla. Const. art. 6, § 8 ......................................................................................... 10
Okla. Const. art. 7, § 7(a) ..................................................................................... 10
Public Law 280 ..................................................................................................... 3
U.S. Const. art. III ................................................................................................ 7

There has long existed in our judicial system a "national policy forbidding federal courts to stay or enjoin pending state court proceedings[.]" *Mitchum v. Foster*, 407 U.S. 225, 230 (1972). Grounded in notions of federalism and comity, this policy demands that "[w]hen there is a parallel, pending state criminal proceeding, federal courts *must* refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) (emphasis added). Such is the case here. Yet, Muscogee (Creek) Nation ("Plaintiff" or "Nation"), which lacks standing in the first place, urges this Court to disregard, or perhaps reverse, this long-standing, established policy and enjoin ongoing state criminal proceedings (and prevent countless future ones) addressing the exact same issues raised by the Plaintiff. More alarmingly, this request represents a collateral attack that would require a federal district court to reverse a recent decision of the Oklahoma Court of Criminal Appeals, if not also the Supreme Court's decision in *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022).

The Complaint [Dkt. #2], which targets prosecutions **<u>unrelated</u>** to Muscogee (Creek) Nation members (each of the actions involve prosecutions of members of other Indian tribes) or to any conduct within the Nation's historical boundaries (each of the actions involve conduct within the historical boundaries of the Cherokee Nation Indian country), should be dismissed for lack of standing or, alternatively, under the *Younger* or *Colorado River* abstention doctrines.

I.    BACKGROUND

Displeased with the opinion of the Oklahoma Court of Criminal Appeals ("OCCA") in *City of Tulsa v. O'Brien*, 2024 OK CR 31, 2024 WL 5001684, issued not long before this lawsuit was filed, as well as rulings by various State court judges in ongoing criminal proceedings, and the Supreme Court's opinion in *Castro-Huerta*, the Nation filed this improper lawsuit. Plaintiff seeks an injunction preventing Matthew J. Ballard, a state prosecutor ("Ballard"), from prosecuting

*all* Indians accused of committing *any* crime in Indian country. However, the subject of Plaintiff's lawsuit is limited to nonmember Indians accused of non-major crimes in Indian country. And while Plaintiff sued a district attorney, the injunction it seeks would directly affect the State's judiciary, which is responsible for determining whether State courts have subject matter jurisdiction. This includes the OCCA, which recently addressed the jurisdictional issue, and State district court judges who are currently applying the law as handed down by the OCCA and the U.S. Supreme Court.

Below is a summary of the OCCA's opinions, which addressed each of Plaintiff's arguments, followed by relevant context regarding the ongoing criminal proceedings at issue. The introduction will then close with a reminder that neither *McGirt* nor *Castro-Huerta* support the novel path Plaintiff pursues here—a federal lawsuit.

*The Oklahoma Court of Criminal Appeals decisions in O'Brien v. City of Tulsa and Stitt v. City of Tulsa*

On December 5, 2024, the OCCA issued a detailed Opinion addressing the central issue in this lawsuit—whether the State has subject matter jurisdiction over nonmember Indians who commit non-major crimes in Indian country within Oklahoma. *City of Tulsa v. O'Brien*, 2024 OK CR 31, 2024 WL 5001684. The OCCA's Opinion provided jurisdictional clarity following the United States Supreme Court's opinions in *McGirt v. Oklahoma*, 591 U.S. 894 (2020) and *Castro-Huerta*, 597 U.S. at 629. These decisions addressed, in part, the State's jurisdiction to prosecute major crimes committed by Indians in Indian country and the State's jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country, respectively. *Castro-Huerta* also reiterated the mandatory analytical framework, which the OCCA employed in *O'Brien* and *Stitt*.

The *O'Brien* case involved the prosecution of traffic violations committed by a nonmember Indian in Indian country. In *O'Brien*, the OCCA took the United States Supreme Court at its word, concluding that "[u]nless preempted by federal law, 'as a matter of state sovereignty, a State has jurisdiction over all of its territory, including Indian country.'" *Id*. ¶ 14 (quoting *Castro-Huerta*, 597 U.S. at 652-53 (citing *Organized Village of Kake v. Egan*, 369 U.S. 60, 72 (1962)). Applying the framework established in *Castro-Huerta* to crimes committed by Indians in Indian country, the OCCA stated:

> Under the Supreme Court's precedent, "a State's jurisdiction in Indian country may be preempted (i) by federal law under ordinary principles of federal preemption, or (ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-government."

*Id*. ¶ 17 (quoting *Castro-Huerta*, 597 U.S. at 638).

The OCCA explicitly rejected each of the contentions Plaintiff raises in the Complaint. The Court held that: 1) the Supreme Court's framework in *Castro-Huerta* applies to a state's criminal jurisdiction over Indians, *Id*. ¶¶ 13-17; 2) neither Public Law 280 nor the 1906 Oklahoma Enabling Act preempts state jurisdiction over general crimes committed by Indians, *Id*. ¶ 20; 3) application of *McClanahan* does not override *Bracker* balancing or any other component of the *Castro-Huerta* framework, *Id*. ¶¶ 27-35; and 4) as here, the framework urged by O'Brien "disregard[ed] the plain holding of *Castro-Huerta* and instead rel[ies] largely on Justice Gorsuch's dissent and a string of citations to U.S. Supreme Court precedent that ultimately undermine its own argument." *Id*. ¶ 5 (Musseman, J., concurring).[1] Accordingly, the OCCA found that the State has jurisdiction to

---

[1] The OCCA references *McClanahan v. State Tax Comm'n of Arizona*, 411 U.S. 164 (1973) (holding that the Arizona state individual income tax was unlawful as applied to reservation Navajo Indians with respect to income derived wholly from reservation sources) and *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 145 (1980) ("This inquiry is not dependent on mechanical or absolute conceptions of state or tribal sovereignty, but has called for a particularized inquiry

prosecute these non-major crimes committed in Indian country. On February 5, 2025, the OCCA issued an order denying O'Brien's Petition for Rehearing.

The OCCA has since issued a similar decision in *Stitt v. City of Tulsa*, 2025 OK CR 5. Reiterating its holding in *O'Brien*, the court "found that *Oklahoma has concurrent criminal jurisdiction in Indian country over non-member Indian defendants accused of committing non-major crimes*." *Id*. at ¶ 8, citing *O'Brien*, 2024 OK CR 31, ¶ 35 (emphasis added). In other words, the OCCA has issued another decision explicitly addressing the issue raised by Plaintiff in this improper litigation. And unlike *O'Brien*, an appeal stemming from the lower court's sustainment of a motion to dismiss for lack of jurisdiction, *Stitt* derived from a conviction following a non-jury trial. *Stitt*, 2025 OK CR 5, ¶ 1, 9. So, the *Stitt* decision will not be remanded and is immediately appealable to the United States Supreme Court.

*The ongoing criminal proceedings Plaintiff seeks to have enjoined*

As support for its Complaint, Plaintiff references three ongoing criminal prosecutions that Defendant filed in Rogers County District Court for conduct that occurred in Oklahoma, within the historical bounds of the Cherokee Nation (the "Ongoing Prosecutions"). Compl. ¶ 21; *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 636 (2022) ("Indian country is part of the State, not separate from the State."). In addition to the fact that each was pending at the time Plaintiff filed its Complaint, each has at least one common theme—allegations of non-major crimes committed by nonmember Indian defendants outside the historical boundaries of the Nation. Additional details of the Ongoing Prosecutions follow.

---

into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law.").

In *State v. Bull*, CF-2023-226 (Dist. Ct. Rogers Co.),[2] Ballard filed criminal charges against Brayden Bull, a Navajo Nation member, for conduct that occurred "within the historical bounds of the Cherokee Nation[.]" State v. Crosson, 2023 OK CR 18, ¶ 2, 540 P.3d 16. The district court initially refused to issue a warrant after receiving a probable cause affidavit, but the OCCA issued a writ of mandamus instructing the lower court to do so.  *Crosson*, 2023 OK CR at 18, 540 P.3d at 16. Bull is accused of manufacturing child porn in violation of 21 O.S. § 1021.2, distribution of child porn in violation of 21 O.S. § 1021, and possession of child porn in violation of 21 O.S. § 1024.2. Ballard is joined by special prosecutor Greg Mashburn, whom Governor Stitt appointed pursuant to his authority under 74 O.S. § 6. Not even Bull has filed a challenge to the State's jurisdiction. Yet Plaintiff seeks to do so in this lawsuit. Bull's preliminary hearing is set for April 4, 2025.

In *State v. Williams*, CF-2023-311 (Dist. Ct. Rogers Co.),[3] Ballard filed criminal charges against Tony Demond Williams, a member of the Chickasaw Nation. Williams is accused of aggravating trafficking in illegal drugs (fentanyl) in violation of 63 O.S. § 2-415(C). The alleged conduct occurred within the historical bounds of the Cherokee Nation. *State v. Williams*, Minute, CF-2023-311 (Dist. Ct. Rogers Co. Sept. 8, 2023). Williams has challenged State jurisdiction based on *McGirt*. Within two months prior to the commencement of this action, the Cherokee Nation, Chickasaw Nation, and the U.S. Department of Justice's Environment and Natural Resources Division filed amicus submissions in *Williams*, advancing the arguments raised here. The issue of whether the State court has jurisdiction has been extensively briefed and is pending a decision

---

[2] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=rogers&number=CF-2023-226.
[3] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=rogers&number=CF-2023-311.

from Rogers County District Judge Stephen Pazzo.[4] A decision will be appealable to the OCCA, and any ruling there may be appealable to the United States Supreme Court. *See* 22 O.S. § 1051(A); Sup. Ct. R. 11.

In *State v. Ashley*, CF-2024-421 (Dist. Ct. Rogers Co.), Ballard filed criminal charges against Eric Ashley, a member of the Choctaw Nation. Ashley was accused of child neglect in violation of 21 O.S. § 843.5(C),[5] and remains accused of possession of controlled dangerous substance in violation of 63 O.S. § 2-402 and possession of drug paraphernalia in violation of 63 O.S. § 2-405(B). The conduct occurred within the historical boundaries of the Cherokee Nation. *State v. Ashley*, Supp. Mot. to Dismiss for Lack of Jurisdiction, p. 2, CF-2024-421 (Dist. Ct. Rogers Co. Feb. 21, 2025) The case is currently pending. And Ashley recently challenged the State court's jurisdiction, covering the arguments that Plaintiff improperly advances here. *Id*.

Unless disrupted by an improper federal injunction, each of these cases can trend on the same course as *McGirt* and *Castro-Huerta* did.

*McGirt* and *Castro-Huerta*

Although Plaintiff's Complaint repeatedly references *McGirt* and *Castro-Huerta*, it fails to acknowledge that both cases arose from State court proceedings. Like the criminal cases cited in

---

[4] At the urging of Williams and the Cherokee Nation, and over the State's objection, a "MCGIRT DECISION Hearing" has been continued to June 20, 2025. *State v. Williams*, Order Granting Motion to Continue, CF-2023-311 (Rogers Co. Dist. Ct. Feb. 27, 2025); *See also Id*. minute entry, CF-2023-311 (Rogers Co., Dist. Ct. Mar. 21, 2025) ("DFT PRESENT WITH ATTYS CHAD HARSHA[, ATTORNEY GENERAL FOR THE CHEROKEE NATION] AND KEVIN EASLEY . . . ."). Said differently, criminal defendants and Tribal Nations are leveraging improper lawsuits like this to halt prosecutions of individuals such as Williams, who stands accused of dangerous crimes.

[5] On February 27, 2025, Ballard amended the charges against Ashley. The State charge of child neglect has been dismissed because it is arguable that the State crime, even though not defined by the Major Crimes Act, is a major crime. All remaining charges in the Ongoing Prosecutions are non-major crimes. Notably, dismissal would be necessary under the standing and abstention analyses herein, regardless of whether the crimes at issue were only non-major crimes.

Plaintiff's Complaint, McGirt and Castro-Huerta were prosecuted by an Oklahoma district attorney in a county courthouse, with appeals made to the OCCA—the same State appellate court where Bull, Williams, and Ashley can seek resolution of any jurisdictional issues or other grievances they may wish to raise. From there, the United States Supreme Court is available, just as it was in *McGirt* and *Castro-Huerta*. Neither of those cases resulted from federal lawsuits, declaratory judgments, or injunctions. Despite this established pattern, Plaintiff now refuses to recognize its applicability to the Ongoing Prosecutions.

As will be demonstrated, Plaintiff lacks standing to proceed. Even if it did have standing, this case still must be dismissed under the Anti-Injunction Act, 28 U.S.C. § 2283, and the *Younger* abstention doctrine derived from *Younger v. Harris*, 401 U.S. 37 (1971), or, alternatively, pursuant to *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976).

## II.     STANDING

Injury-in-fact, causation, and redressability comprise the three requirements of U.S. Const. art. III standing and ensure litigation parties have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issues upon which the court so largely depends for illumination." *Miller v. Fluent Home, LLC*, 220CV00641HCNJCB, 2021 WL 8086367, at *3 (D. Utah Mar. 18, 2021) (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007)) Plaintiff must demonstrate the requirements are met before the merits of a case may be reached. *Id*. At the least, Plaintiff cannot establish either an injury-in-fact or redressability.

A. *Plaintiff, which takes issue with prosecutions of non-members for conduct that occurred outside the Nation's historical boundaries, has not suffered an injury-in-fact.*

An injury alleged must be "concrete and particularized," and the threat of that injury must be "actual and imminent, not conjectural or hypothetical." *Petrella v. Brownback*, 697 F.3d 1285,

1293 (10th Cir. 2012) (quoting *Summers v. Earth Island Institute,* 555 U.S. 488, 493 (2009). To be

concrete, an injury must be real harm to a legally protected interest, not abstract. *N. Mill St., LLC*

*v. City of Aspen*, 6 F.4th 1216, 1229 (10th Cir. 2021). An injury is particularized only if it affects a

party in a personal and individual way. *Id*. And a party who is not threatened by—and, indeed,

could never be subject to—state criminal prosecution lacks standing and is not an appropriate

plaintiff to challenge any such pending prosecutions.

> A federal lawsuit to stop a prosecution in a state court is a serious matter. And
> persons having no fears of state prosecution except those that are imaginary or
> speculative, are not to be accepted as appropriate plaintiffs in such cases.

*Younger*, 401 U.S. at 42. Plaintiff has not suffered an injury that is concrete, particularized, or

actual or imminent. Plaintiff's claims of injury are abstract and are the epitome of hypothetical.[6]

    *First*, the Ongoing Prosecutions are against individual criminal defendants, not the Nation

(nor its members). Only the individuals can claim specific injury. Like Jimcy McGirt and Victor

Manuel Castro-Huerta, the individual defendants subject to the Ongoing Prosecutions have sought

relief through proper channels—district court filings and appeals to the OCCA. The United States

Supreme Court is available to them all the same. As in *McGirt* and *Castro-Huerta*, Plaintiff may

participate as amicus curiae, as may others whose injuries are abstract.

    There is a reason that the seminal, jurisdictional cases most heavily relied upon by Plaintiff

have not involved Indian Tribes as parties but are instead styled *Oklahoma v. Castro-Huerta* and

*Oklahoma v. McGirt*. The State prosecutes individuals. And its courts "have an independent

---

[6] The actions at issue are limited to Ballard's prosecutions of the nonmember Indians in the
Ongoing Prosecutions. Actions do not include any broader group of individuals, such as member
Indians charged with criminal conduct within the boundaries of their Tribe's Indian country. So, a
request for relief associated with prosecutions other than those against nonmember Indians would
necessarily require this Court to engage a hypothetical. *Carney v. Adams*, 592 U.S. 53, 58 (2020)
(emphasizing an injury-in-fact "cannot be conjectural or hypothetical")

obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

*Second*, the Ongoing Prosecutions—the likes of which have existed for over a century—do not impact Plaintiff's authority to prosecute. The United States Supreme Court recently reaffirmed that an individual may be prosecuted by separate sovereigns for the same conduct. *Denezpi v. United States*, 596 U.S. 591 (2022); *see also United States v. Lanza*, 260 U.S. 377, 382 (1922) ("Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other."). Of course, the Ongoing Prosecutions cannot possibly impact Plaintiff at all, as they do not involve any conduct within the historical bounds of the Muscogee (Creek) Nation or any of the Nation's members.

Plaintiff will presumably point to *Ute Indian Tribe v. Utah, et al.*, 790 F.3d 1000 (10th Cir. 2015), for the contention that the Ongoing Prosecutions "infringe[] on [Plaintiff's] tribal sovereignty[.]" Compl. ¶ 13. However, *Ute* is inapposite. *Ute* involved the prosecution of a member of the Ute Indian Tribe for conduct that occurred on the Ute reservation. *Id*. at 1004-05. In contrast, Ballard's prosecution concerns non-member Indians for conduct occurring outside the historical bounds of the Muscogee (Creek) Nation. This conduct doesn't implicate Plaintiff's sovereignty, let alone infringe upon it.

Plaintiff is unable to meet the initial requirement for standing. Even if this requirement were met, Plaintiff cannot demonstrate redressability.

### B. *A favorable ruling would not redress any purported injury.*

To establish redressability, one "must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury." *Nova Health Sys. v. Gandy*, 416 F.3d

1149, 1158 (10th Cir. 2005). Said differently, redressability is absent when, as here, the Court's decision would have no meaningful effect on a complainant's alleged injury.

Had Plaintiff claimed that Defendant's prosecutions caused injury, redress would not be available through this lawsuit. The most extreme—albeit inappropriate—relief would be to enjoin Ballard from prosecuting certain crimes against a limited class of individuals. Even then, redress could not be achieved, and the Ongoing Prosecutions could continue for at least three reasons.

*First*, the Governor has a constitutional duty to "cause the laws of the State to be faithfully executed[.]" Okla. Const. art. 6, § 8. A corresponding statute authorizes the Governor "to employ counsel to protect the rights or interests of the state in any action or proceeding, civil or criminal, which has been, or is about to be commenced, and the counsel so employed by him may, under the direction of the Governor, . . . may prosecute offenses against the law of the state[.]" 74 O.S. § 6.

*Second*, the Oklahoma Attorney General ("OAG") can initiate or appear in criminal prosecutions on behalf of the state. 74 O.S. § 18(A)(3). The OAG may also "appear for the state and prosecute and defend all" criminal proceedings in the Court of Criminal Appeals in which the state is interested as a party. 74 O.S. § 18b(A)(1). Given the Governor's and OAG's authority, an injunction would not hinder the State's ability to continue the prosecutions at issue.

*Third*, the requested injunction could not affect the trial courts' or OCCA's ability to proceed with adjudications. Oklahoma "District Court[s] shall have unlimited original jurisdiction of all justiciable matters[.]" Okla. Const. art. 7, § 7(a). And the OCCA "shall have exclusive appellate jurisdiction . . . in all criminal cases appealed from the district . . . courts[.]" 20 O.S. § 40. OCCA "is supreme in all criminal appeals from state courts of this State[.]" *Inverarity v. Zumwalt*, 1953 OK CR 148, ¶ 18, 262 P.2d 725, 730. The OCCA is duty bound to ensure Oklahoma has "a uniform system of criminal jurisprudence[.]" *State v. Davis*, 1913 OK CR 80, ¶ 8, 130 P. 962, 964.

In sum, a favorable decision for Plaintiff against a single district attorney would not redress any purported injury. Therefore, the Complaint must be dismissed for lack of standing.

Even if Plaintiff could clear the standing threshold (it cannot), the lawsuit must still be dismissed pursuant to abstention doctrines.

### III.    THE ANTI-INJUNCTION ACT AND *YOUNGER* ABSTENTION

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This provision reflects the "fundamental policy against federal interference with state criminal prosecutions[.]" *Younger*, 401 U.S. at 46. In *Younger*, the Supreme Court explained that "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id*. at 45. The Court went on to hold that "[o]rdinarily, there should be no interference with such officers; primarily they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is to be done." *Id*. The Supreme Court has put it more bluntly, saying that "[w]hen there is a parallel, pending state criminal proceeding, federal courts *must* refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc.* 571 U.S. at 72 (emphasis added). The proper individuals to challenge a prosecutor's authority are the accused. *Younger*, 401 U.S. at 46. And the appropriate forums are the state courts where charges are pending and defenses may be lodged. *Id*. This principle is rooted in a notion referred to as "Our Federalism"—which emphasizes the "belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id*. at 44.

Under the *Younger* abstention doctrine, federal courts are required to abstain from exercising jurisdiction to interfere with state proceedings when the following three requirements are met:

> (1) [T]here is an ongoing state criminal, civil, or administrative proceeding,
>
> (2) [T]he state court provides an adequate forum to hear the claims raised in the federal complaint, and
>
> (3) [T]he state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019). Once those three criteria are satisfied, "*Younger* abstention is not discretionary." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999). "Thus, claims for declaratory relief and injunctive relief are subject to outright dismissal." *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 523 (10th Cir. 2023).

Each element is easily met here. And even if this lawsuit targets only the authority of a single district attorney but not criminal proceedings as a whole, abstention is still required. *Younger* "governs whether the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002).

    A.  *There are ongoing state criminal proceedings.*

Plaintiff concedes in its Complaint that there are ongoing state criminal proceedings. *See Winn*, 945 F.3d at 1258 (holding the first element is satisfied where the parties do not dispute the existence of an ongoing state criminal proceeding). As the basis for its Complaint, Plaintiff cites the Ongoing Prosecutions. Compl. ¶¶ 20-21. The pendency of the Ongoing Prosecutions establishes this first element and also proves the next.

    B.  *The State court provides an adequate forum to hear the claims raised in the Complaint.*

Regarding the second factor, "unless state law clearly bars the interposition of the federal statutory and constitutional claims," a plaintiff typically has "an adequate opportunity to raise federal claims in state court." *Winn*, 945 F.3d at 1258. State criminal proceedings fail to offer an adequate opportunity to raise federal issues "'only if 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it.'" *Moore v. Sims*, 442 U.S. 415, 433 (1979) (internal citations omitted). A federal plaintiff bears the burden to establish "that state procedural law bar[s] presentation of its claims." *Id.* at 432. This feat becomes nearly insurmountable in light of the Tenth Circuit's full confidence in state courts' ability to address federal issues given "the constitutional obligation of the state courts to uphold federal law[.]" *Weitzel v. Div. of Occupational & Prof'l Licensing of Dep't of Commerce of State of Utah*, 240 F.3d 871, 876 (10th Cir. 2001). *See also Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 12 (1987) (*Younger* abstention "'offers the opportunity for narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests'") (internal citation omitted). "*Younger* requires only the availability of an adequate state-court forum, not a favorable result in the state forum." *Winn*, 945 F.3d at 1258.

Oklahoma state courts are capable of fairly and fully adjudicating the issues that Plaintiff raises in this lawsuit as evidenced by the fact that the State courts: (1) have already addressed the issues; (2) continue to address the issues in ongoing criminal prosecutions; and (3) have proven to be adequate forums to resolve issues of the same or more substantial nature.

*First*, this lawsuit was filed only weeks after the OCCA issued its opinion in *O'Brien*. The *O'Brien* court analyzed and rejected each of Plaintiff's contentions. *See supra* pp. 2-3. Indeed, as it seeks to do again here, the Nation, in a thirty-page brief, argued to OCCA that neither *Castro-Huerta* nor *Bracker* apply to the question of whether the State maintains jurisdiction over

nonmember Indians who commit crimes in Indian country. *City of Tulsa v. O'Brien*, Brief of Amicus Curiae Muscogee (Creek) Nation (Okla. Ct. Crim. App. Aug. 13, 2024). After having reviewed the Nation's brief, *Id.*, Order Denying Petition for Rehearing, p. 2 (Okla. Ct. Crim. App. Feb. 5, 2025), the OCCA held that the State has jurisdiction to prosecute nonmember Indians who commit non-major crimes in Indian country. Either the OCCA's words are hollow or the OCCA already fairly and fully adjudicated the issue of whether the State maintains criminal jurisdiction over non-member Indians who commit non-major crimes in Indian country. Moreover, the OCCA has since reiterated its holding, saying "Oklahoma has concurrent criminal jurisdiction in Indian country over non-member Indian defendants accused of committing non-major crimes." *Stitt v. City of Tulsa*, 2025 OK CR 5, ¶ 8. Plaintiff's dismay with the OCCA's analysis and outcome does not legitimize this lawsuit. The Tenth Circuit has made clear that state courts must provide only an "adequate state-court forum, not a favorable result in the state forum." *Winn*, 945 F.3d at 1258.

*Second*, as discussed above, Plaintiff itself cites the Ongoing Prosecutions in which State courts are actively adjudicating the issues raised here.

*Third*, State courts have proven to be more than adequate forums in which to resolve issues of this nature. For example, both *McGirt v. Oklahoma* and *Oklahoma v. Castro-Huerta*—cases to which Plaintiff repeatedly cites in its Complaint—stemmed from State criminal prosecutions and decisions issued by the OCCA. And the same right that McGirt and Castro-Huerta had to seek review by the OCCA and the United States Supreme Court will be available to each of the criminal defendants in the Ongoing Prosecutions.

No guesswork is needed to determine whether the State courts provide adequate forums to adjudicate the issues raised in Plaintiff's Complaint. The State courts have done so and are doing so now.

C. *The state proceedings involve important state interests.*

The third element of *Younger* abstention is satisfied both as a matter of law and fact. As a general matter, State criminal proceedings "are viewed as 'a traditional area of state concern'" and thus involve important state interests. *Winn*, 945 F.3d at 1258. More specifically, "Oklahoma's important interest in enforcing its criminal laws through proceedings in its state courts remains axiomatic." *Fisher v. Whetsel*, 142 Fed.Appx. 337, 339 (10th Cir. 2005).  Indeed, "[f]rom the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Kansas v. Garcia*, 589 U.S. 191, 211 (2020). The Supreme Court "has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court. . . ." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986).

As a sovereign entity, the State has a duty to protect its residents, enforce its laws, and uphold justice within its territorial boundaries. The Supreme Court recognized this in *Castro-Huerta*: "[T]he State has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims." *Id.* at 651. "The State also has a strong interest in ensuring that criminal offenders—especially violent offenders—are appropriately punished and do not harm others in the State." *Id.* The Court in *Castro-Huerta* made no distinction between Indian and nonmember Indian offenders. The State's interests are obvious when, as here, the State criminal proceedings involve egregious crimes, such as child pornography and fentanyl possession in the presence of a child.

The Ongoing Prosecutions involve important State interests under any objective analysis.

D. *No exceptions to the bar on federal injunctions of state criminal proceedings apply.*

Injunctive intervention in state criminal proceedings is permissible only if (1) irreparable injury is "both great and immediate," (2) the state law is "flagrantly and patently violative of express constitutional prohibitions, or (3) Plaintiff could show "bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief." *Mitchum v. Foster*, 407 U.S. 225, 230-31 (1972) (internal citations omitted). Regarding the third factor, the plaintiff bears a "heavy burden" to establish bad faith or harassment, and the Tenth Circuit looks to three factors:

> (1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions.

*Weitzel*, 240 F.3d at 877; *see also Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) ("[I]t is the plaintiff's 'heavy burden' to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment.").

*First*, any allegation of irreparable injury fails as a matter of fact and law. Defendant's prosecution of non-member criminal defendants for conduct occurring outside the Muscogee (Creek) Nation's historical boundaries cannot possibly impact Plaintiff's authority to prosecute the same criminal occurrences; thus, no injury. Moreover, the Ongoing Prosecutions had been pending since as early as a year and a half prior to the filing of this lawsuit; thus, no imminency. *See State v. Bull*, CF-2023-226 (Rogers Co. Dist. Ct. June 29, 2023).

*Second*, Plaintiff also has not alleged that the Ongoing Prosecutions are motivated by a suspect class or in retaliation for an exercise of constitutional rights. Of course, Plaintiff could not sincerely contend that the prosecution of unconscionable conduct—manufacturing of child

16

pornography and possession of fentanyl in the presence of a child—is motivated by anything other than concern for public safety.

*Third*, Plaintiff likewise has not attempted to show the existence of bad faith, harassment, or any other unusual circumstance warranting equitable relief. Any such effort would be futile. The OCCA's recent decisions in *Stitt* and *O'Brien*—the latter being the decision that sparked this litigation—the Supreme Court's decision in *Castro-Huerta*, and state district court rulings in the Ongoing Prosecutions endorse the State's prosecutorial jurisdiction; thus, no frivolity or abuse of prosecutorial discretion.

Here again, Plaintiff's likely retreat to the Tenth Circuit's decision in *Ute*—a case involving the prosecution of a Ute member on the Ute reservation—would fall flat. Plaintiff may contend that the *Ute* court highlighted an exemption to *Younger* where "states seek to enforce state law against Indians in Indian country[.]" *Ute*, 790 F.3d 1000, 1009. Context is everything. There, the court, quoting *Seneca-Cayuga Tribe of Oklahoma v. State of Okl. ex rel. Thompson*, 874 F.2d 709, 713 (10th Cir. 1989), referenced an inapplicable, if not obsolete, presumption of paramount "federal law, federal policy, and federal authority" over state's interest. Following its discussion about this purported presumption, the *Seneca-Cayuga* court clarified that state interests are of great weight "in cases involving off-reservation activities or non-reservation Indians," as here. *Id.* (internal citations omitted). The Supreme Court has since explained, "the State has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims. The State also has a strong interest in ensuring that criminal offenders—especially violent offenders—are appropriately punished and do not harm others in the State." *Castro-Huerta*, 597 U.S. at 651.

In sum, Plaintiff cannot fit its allegations into an exception to the non-discretionary bar on federal court intervention in state criminal proceedings. *Younger* abstention requires dismissal.

E. *Plaintiff's generalized request to enjoin potential future criminal proceedings is governed by the same Younger abstention considerations.*

Although *Younger* abstention may only be mandatory where there is an "ongoing criminal prosecution," there "plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975); *see also Hicks v. Miranda*, 422 U.S. 332, 348–49 (1975) (holding that Younger abstention could not be avoided on the ground that no criminal prosecution was pending against appellees on the date the federal complaint was filed where appellees "had a substantial stake in the state proceedings").

> Where a federal plaintiff has "a substantial stake in the state proceedings" or has interests that are "intertwined" with the interests of a party to the state proceedings, abstention—sometimes referred to as derivative abstention—may be appropriate.

*Ellis v. Morzelewski*, 2:21-CV-639-TC, 2022 WL 3645850, at *7 (D. Utah Aug. 24, 2022); *see also Herrera v. City of Palmdale*, 918 F.3d 1037, 1046-47 (9th Cir. 2019) (holding that parties with "a sufficiently close relationship or sufficiently intertwined interests" may be "treated similarly for purposes of *Younger* abstention.") (collecting cases).

As argued above, Plaintiff lacks standing to assert claims regarding future prosecutions not yet initiated, which are subject to its request for injunctive relief. However, to the extent the Court considers any such generalized claims, derivative abstention is appropriate due to how intertwined Plaintiff's interests are. Plaintiff not only references the Ongoing Prosecutions as support for this lawsuit, Compl. ¶ 21, but also details how each criminal defendant challenges the State's jurisdiction in the same manner as Plaintiff does here, Compl. ¶ 22. Plaintiff then articulates that its generalized claims are no different from those being litigated in the Ongoing Prosecutions.

Compl. ¶ 24-26. *Younger* abstention applies to all prosecutions covered by Plaintiff's Complaint, not just the Ongoing Prosecutions.

IV.    COLORADO RIVER ABSTENTION

Dismissal is also appropriate under the *Colorado River* abstention doctrine. The *Colorado River* doctrine provides, "reasons of wise judicial administration" at times warrant "dismissal of a federal suit due to the presence of a concurrent state proceeding." *D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (quoting *Colorado River*, 424 U.S. at 818). Declining jurisdiction based on the *Colorado River* doctrine is appropriate in exceptional circumstances. *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). To determine whether such circumstances exist, courts must first determine whether the state and federal proceedings are parallel. *Id.* "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* (*quoting New Beckley Mining Corp. v. International Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991).

It is indisputable that the issues in Plaintiff's Complaint have been and are currently being litigated in State court. Plaintiff cites three such examples—the Ongoing Prosecutions—and was involved in at least one other (*O'Brien*). In one of these cases, the criminal defendant recently filed a twenty-three-page brief, exhaustively advancing each allegation included in Plaintiff's Complaint. *State v. Williams*, Reply in Support of Motion to Dismiss for Lack of Jurisdiction, CF-2023-311 (Dist. Ct. Rogers Co. Feb. 14, 2025). Similarly, in *Ashley*, the Defendant filed a twenty-plus-page brief presenting the same arguments. *State v. Ashley*, Supp. Mot. to Dismiss for Lack of Jurisdiction, CF-2024-421 (Dist. Ct. Rogers Co. Feb. 21, 2025). These proceedings clearly demonstrate parallel state and federal proceedings.

The parties are also substantially the same in this and the State criminal proceedings. While Plaintiff has presumably not filed amicus submissions in the Ongoing Prosecutions due to the absence of any conduct by a Muscogee (Creek) Nation member within the Nation's historical boundaries, other Tribal Nations have participated. For instance, in *State v. Williams*, the Cherokee Nation and Chickasaw Nation filed amicus briefs shortly before Plaintiff filed this lawsuit. *State v. Williams*, Amicus Brief of the Cherokee Nation and Chickasaw Nation in Support of Motion to Dismiss, CF-2023-311 (Dist. Ct. Rogers Cnty. Oct. 31, 2024). Additionally, the parties involved in the Ongoing Prosecutions are necessarily the same, whether they're mentioned here or parties there.

Because the state and federal proceedings are parallel, the court must next determine "whether deference to state court proceedings is appropriate under the particular circumstances." *Fox*, 16 F.3d at 1082. To make that determination, courts may consider these factors: "(1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction." *Id*. a (citing *Colorado River*, 424 U.S. at 818). Defendant will address each in turn.

This case does not involve property, so the first factor does not apply. Next, the federal forum is inconvenient for at least two reasons. First, appeals from this litigation will be addressed by the Tenth Circuit, in Colorado, whereas appeals from the State court proceedings will be and have been addressed by the OCCA, in Oklahoma. The travel and expense associated with the former is an unnecessary burden. Second, this federal proceeding requires substantial briefing and expenditure of additional taxpayer dollars only to have this Court address the exact issues being addressed—even already addressed—by State courts.

Moreover, this is quintessential piecemeal litigation, which is the paramount *Colorado River* consideration. *Colorado River*, 424 U.S. at 819. Plaintiff concedes as much through reliance on the Ongoing Prosecutions, which have been on file since as early as June 2023. Again, Plaintiff's contentions central to its Complaint are squared before the State court in at least *State v. Williams* and *State v. Ashley* and may also be in *State v. Bull*. Moreover, the issues have already been addressed by the OCCA, in *O'Brien*, with Plaintiff's participation, *City of Tulsa v. O'Brien*, Brief of Amicus Curiae Muscogee (Creek) Nation, No. S-2023-715 (Okla. Ct. Crim. App. August 13, 2024),[7] and in *Stitt*, also with Plaintiff's involvement, *Stitt v. City of Tulsa*, Brief of Amici Curiae Muscogee (Creek) Nation and Seminole Nation of Oklahoma, No. M-2022-984 (Okla. Ct. Crim. App. May 31, 2023). The latter is ripe for appeal to the United States Supreme Court, where Plaintiff will again be able to express its position. Should this case survive dismissal, the only wrinkle will be whether the matter should have been dismissed for the reasons set forth herein.

Last, the State courts obtained jurisdiction in the Ongoing Prosecutions as early as June 2023. This case was not filed until January 29, 2025—just after the OCCA issued its opinion in *O'Brien*. Each applicable *Colorado River* factor weighs heavily in favor of dismissal.

## CONCLUSION

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Younger*, 401 U.S. at 43. In this case, Plaintiff has attempted to throw that history out and turn established principles of federalism and comity on their head. The Ongoing Prosecutions—none of which involve the Nation's members or its Indian country—are properly brought in State court, and they should be allowed to proceed without federal court interference. The arguments raised by

---

[7] Notably, counsel who authored the Nation's amicus brief also represents Plaintiff here.

Plaintiff have been raised in these and other similar state court criminal prosecutions as our nation's court system wisely provides. Nothing is preventing individual defendants from raising these arguments in those proceedings, or Plaintiff from submitting amicus briefs where appropriate. This improper collateral attack on Oklahoma's judicial system cannot be permitted to stand.

Accordingly, Defendant respectfully requests the dismissal of Plaintiff's Complaint due to lack of standing. Alternatively, even if standing is established, the lawsuit should be dismissed under either *Younger* abstention or *Colorado River* abstention.

Date: March 25, 2025                    Respectfully submitted,


                                        *s/Phillip G. Whaley*
                                        Phillip G. Whaley, OBA #13371
                                        Grant M. Lucky, OBA #17398
                                        Patrick R. Pearce, Jr., OBA #18802
                                        RYAN WHALEY
                                        400 North Walnut Avenue
                                        Oklahoma City, OK  73104
                                        (405) 239-6040
                                        (405) 239-6766 FAX
                                        pwhaley@ryanwhaley.com
                                        glucky@ryanwhaley.com
                                        rpearce@ryanwhaley.com

                                        Trevor S. Pemberton, OBA #22271
                                        PEMBERTON LAW GROUP PLLC
                                        600 North Robinson Avenue, Suite 323
                                        Oklahoma City, OK 73102
                                        P: (405) 501-5054
                                        trevor@pembertonlawgroup.com

                                        *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 25, 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.

*s/Phillip G. Whaley*
Phillip G. Whaley
